IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-40803
Summary Calendar
_____


A & A WRECKER SERVICE INCORPORATED,
doing business as A & A Wrecker
Service, a Texas Corporation; ET AL.,

                                            Plaintiffs,


A & A WRECKER SERVICE INCORPORATED,
doing business as A & A Wrecker
Service, a Texas Corporation;
DEL & PAUL INCORPORATED, doing
business as D & P Wrecker Service,
a Texas Corporation; NOEL ANDERWALD,
JR., an individual; SYLVIA ANDERWALD,
Individually and as Next Friend of
Makilynn Elizabeth Anderwald, a Minor,

                                       Plaintiffs-Appellants,

                        versus

CITY OF GALVESTON, TEXAS; ET AL.,

                                            Defendants,

CITY OF GALVESTON, TEXAS; JOHN DOES, 1-10,

                                       Defendants-Appellees.
_____

          Appeal from the United States District Court for the
                    Southern District of Texas
                         (G-95-CV-111)
_____
                        May 19, 1998
Before JOLLY, BENAVIDES, and PARKER, Circuit Judges.

PER CURIAM:[*]

There are two issues on appeal in this case. The first is whether the magistrate judge erred when he determined that the plaintiffs were competent at the time they executed a settlement agreement with the defendants. The second issue is whether the magistrate judge erred under Texas law in granting the defendants attorneys' fees for the amounts incurred in enforcing the settlement agreement. Finding no reversible error with respect to the first issue and that we lack jurisdiction over the second, we affirm the magistrate judge's determination of mental capacity and dismiss the remainder of the appeal.

I

The plaintiffs in this action--two Galveston, Texas automotive towing businesses, their principals, and the minor child of one of the business owners--sued the defendant City of Galveston, Texas, and others for various alleged unlawful acts that deprived the plaintiffs of certain rights and privileges under state and federal law. The parties consented to trial before the magistrate judge and the case continued through the discovery and dispositive motion phase. On May 17, 1996, two of the plaintiffs, Noel Sr. and Arlene Anderwald, suffered severe injuries when they were involved in a

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

head-on automobile accident. Three months later, the parties participated in voluntary mediation and executed a written settlement agreement disposing of the plaintiffs' claims.

Days after the mediation, Arlene Anderwald made several extrajudicial statements to the court and the defendants to the effect that both she and her husband, Noel Sr., were physically and mentally incapacitated when they executed the settlement agreement and that the agreement was the product of coercion and duress. Furthermore, when the defendants tendered a release, a proposed final judgment, and settlement funds to the plaintiffs, all of the plaintiffs refused to sign the release or accept the settlement funds. The defendants thus filed with the court a "Motion to Enforce Settlement Agreement" to resolve the matter.

After conducting an evidentiary hearing, the magistrate judge determined that the plaintiffs were competent when they executed the agreement. The judge thus granted the defendants' motion and entered a final judgment on June 5, 1997, disposing of all of the issues in the case except for the defendants' pending motion for attorneys' fees and expenses. On June 30, 1997, the magistrate judge awarded the defendants attorneys' fees in the amount of $9,926.50 and expenses in the amount of $1,909.49. The plaintiffs timely appealed.

II

The plaintiffs first contend that Noel Sr. and Arlene Anderwald were incompetent when they executed the settlement agreement with the defendants and that the magistrate judge committed reversible error when he determined otherwise. We review factual findings for clear error and conclusions of law de novo. Bolding v. Commissioner of Internal Revenue, 117 F.3d 270, 273 (5th Cir. 1997). The question presented here--whether the plaintiffs were competent when they executed the settlement agreement--is a finding of fact. Bach v. Hudson, 596 S.W.2d 673, 677 (Tex. Ct. App. 1980); Judd v. Aiken, 497 S.W.2d 632, 633 (Tex. Ct. App. 1973); see also Flugence v. Butler, 848 F.2d 77, 79 (5th Cir. 1988) (noting in other context that competency is factual finding); Streetman v. Lynaugh, 835 F.2d 1521, 1527 (5th Cir. 1988) (stating that determination of competency presents an "essentially factual question"). "A finding of fact is clearly erroneous when, even though there may be evidence to support the finding, the reviewing court upon examination of the entire evidence is left with the definite and firm conviction that a mistake has been committed." Bolding, 117 F.3d at 273. Texas's legal standard for whether a person has the requisite mental capacity to execute a contract is whether the person "appreciated the effect of what he was doing and understood the nature and consequences of his acts and the business he was transacting." Bach, 596 S.W.2d at 675-76. Furthermore,

-4-

under Texas law, a party is presumed competent to enter into a contract.  Estate of Galland v. Rosenberg, 630 S.W.2d 294, 297 (Tex. Ct. App. 1981).

The plaintiffs presented evidence that Mrs. Anderwald suffered multiple fractures of her hip, back, shoulder and arm, and endured seventeen hours of surgery after the car wreck.  Mr. Anderwald suffered a collapsed lung, a fractured left foot, and a right foot so severely crushed that it required amputation.  At the mediation, which took place three months after the accident, both senior Anderwalds were still in a great deal of physical pain.  Arlene was wheelchair-bound and had been prescribed various medications for pain, which she refused to take the day of the mediation so that she might have a "clear head."  Her pain on the day of the mediation was thus even more intense because of her refusal to self-medicate.  Noel Sr. still had 190 stitches in his stump and was learning to maneuver with a pair of crutches.  He also had been prescribed various pain relief medications which, unlike his wife, he took during the course of the mediation.  He testified at the hearing that he was not thinking clearly at the mediation because of the medication and that he still suffered pain.

In addition to their extreme physical discomfort, the Anderwalds testified to their deep anxiety over their financial situation.  Medical expenses were continuing to mount and Noel Sr.

required a $12,000 prosthesis for his leg. Furthermore, one of their attorneys informed the Anderwalds that if they refused to agree to a settlement, they would have to immediately extinguish their outstanding bill of $16,000 with her law firm if the attorney were to continue to represent them. This news came as a complete (and unwelcome) surprise and generated a heated argument wherein Arlene eventually threatened the attorney with physical violence.

The mediation process degenerated into hysterical chaos with the Anderwalds yelling at their attorney and at each other. Arlene attempted to leave the room and informed her husband that his acceptance of the settlement terms would likely end their twenty-nine years of marriage. Both Anderwalds cried and threatened each other with physical violence. Those present later described the situation as "bizarre," an "aggressive, hostile environment," "chaos," and a "madhouse." The mediation lasted ten hours with Noel Sr. begging Arlene to sign the agreement joining the rest of the plaintiffs, and Arlene eventually doing so.

The magistrate judge, however, also heard testimony and reviewed evidence indicating that the Anderwalds possessed the requisite legal capacity to execute the settlement agreement. Arlene was quite vocally involved at the mediation in discussions concerning the agreement and she was not pleased with its terms, but she eventually consented to sign because of her husband. Noel

Sr. testified that he believed his mental state on the day of mediation was "all right." Although ambivalent, angry, and hysterical at the front end of the mediation, the plaintiffs had calmed down substantially by the time they actually executed the agreement. Counsel was also present throughout the event. Further, the mediator and the Anderwalds' attorney both testified that they believed the plaintiffs competent to execute the settlement agreement.

The magistrate judge had before him conflicting evidence and we may only reverse his determination of sufficient legal mental capacity[1] if, after a review of all the evidence, we are left with the indelible impression that a mistake has been made. On the record before us, we cannot hold that the magistrate judge clearly erred when he concluded that the plaintiffs "appreciated the effect of what [they] w[ere] doing and understood the nature and consequences of [their] acts and the business [they] w[ere] transacting." The plaintiffs "offered no prior history of psychiatric treatment or medical opinion testimony that [their] behavior was evidentiary of incompetency. Claims of anger and erratic behavior, without elaboration, certainly do not give rise to an issue of mental incompetency." Rosenberg, 630 S.W.2d at 297-

---

[1]The plaintiffs abandoned their claims of coercion and duress at the hearing, leaving only the issue of their mental capacity.

98.  We accordingly affirm the magistrate judge's determination that the plaintiffs possessed the legal capacity necessary to execute the settlement agreement and, therefore, we affirm the judge's subsequent final judgment enforcing its terms.

III

The plaintiffs also contest the magistrate judge's order awarding the defendants attorneys' fees and expenses in the amount of $11,835.99--the amount the magistrate judge found the defendants had reasonably incurred in their efforts to enforce the settlement agreement.  The plaintiffs submit that Texas law, on which the magistrate judge relied in his order, does not provide for such an award in this instance.  In response, the defendants initially argue that we lack jurisdiction over this issue because the plaintiffs' notice of appeal is fatally insufficient as to it.  Alternatively, they maintain that their efforts to enforce the settlement agreement constitute attempts to enforce a contract and that Texas law provides a specific remedy for such actions.  We need not reach the merits of the award of attorneys' fees because we agree that we lack jurisdiction to do so.

The magistrate judge entered "final" judgment in this case on June 5, 1997.  <u>Budinich v. Becton Dickinson & Co.</u>, 486 U.S. 196, 202-03, 108 S.Ct. 1717, 1722, 100 L.Ed.2d 178 (1988) (promulgating "uniform rule that an unresolved issue of attorney's fees for the

litigation in question does not prevent judgment on the merits from being final."). The defendants' motion for attorneys' fees and expenses was still pending at that time, and the court later entered the order granting that motion on June 30, 1997. The plaintiffs filed a notice of appeal on July 7, 1997, stating their intention to appeal "from the Final Judgment entered in this action on June 3,[2] 1997." The defendants essentially argue that because the plaintiffs specifically stated that they were appealing only from the June 3 order, the notice of appeal is insufficient to vest this court with jurisdiction over the June 30 order awarding attorneys' fees and costs. The plaintiffs contend that the June 3 order contemplated the June 30 order awarding attorneys' fees and expenses and that the notice of appeal is thus sufficient.

Rule 3(c) of the Federal Rules of Appellate Procedure provides in pertinent part that a notice of appeal must "designate the judgment, order, or part thereof appealed from." Fed.R.App.P. 3(c). Although we are liberally to construe the filings under this rule, we "'may not waive the jurisdictional requirements of Rules 3 and 4, even for 'good cause shown' under Rule 2, if [we] find[] that they have not been met.'" Pope v. MCI Telecommunications Corp., 937 F.2d 258, 266 (5th Cir. 1991) (quoting Torres v. Oakland

---

[2]The magistrate judge signed the final judgment on June 3, 1997, but the order was not actually "entered" until June 5, 1997.

Scavenger Co., 108 S.Ct. 2405, 2409 (1988)). Further, "[w]here the appellant notices the appeal of a specified judgment only or a part thereof, . . . this court has no jurisdiction to review other judgments or issues which are not expressly referred to and which are not impliedly intended for appeal." Id. (quoting C.A. May Marine Supply Co. V. Brunswick Corp., 649 F.2d 1049, 1056 (5th Cir. 1981)).

The plaintiffs in this instance specifically noticed for appeal the final judgment "entered in this action on June 3, 1997." That order merely enforced the provisions set out in the settlement agreement. The court did not rule at that time upon the defendants' motion for the attorneys' fees that they had incurred as a result of their efforts to enforce the agreement. The final judgment did mention the pending order, however:

> It is further ORDERED, ADJUDGED and DECREED that each party shall bear its own costs of Court, subject to the Court's consideration of the pending Motion of Defendants regarding the additional costs incurred by Defendants in securing the enforcement of the Mediated Settlement Agreement.

The plaintiffs contend that, since the order from which they specifically appealed mentions the defendants' motion for costs, the notice of appeal is sufficient to vest this court with jurisdiction over the later order awarding costs.

The plaintiffs are mistaken. "Those cases that do construe notices of appeal liberally to find jurisdiction do so where it is

clear, from the face of the notice, that the appeal intends to raise all issues or other parties." Pope, 937 F.2d at 266-67; NCNB Texas Nat'l Bank v. Johnson, 11 F.3d 1260, 1269 (5th Cir. 1994) (noting "the intent to appeal must be clear"). There is nothing from the face of the notice that indicates that the plaintiffs intended to appeal the order awarding fees. Final judgment was entered on June 5, 1997; the order awarding attorneys' fees and expenses was entered on June 30, 1997. The plaintiffs filed their notice of appeal on July 7, 1997--after both orders had been entered--but the notice specifically referred only to the order of final judgment. The plaintiffs had before them both orders, but they specifically limited their notice to that of "June 3, 1997." From these facts we indeed only can conclude that the plaintiffs intended not to appeal the June 30 order. Thus, as they designated only the court's June 5 order, that is the only judgment we may review. Capital Parks, Inc. v. Southeastern Advertising & Sales Sys., Inc., 30 F.3d 627, 630 (5th Cir. 1994); see Johnson, 11 F.3d at 1269-70; Pope, 937 F.2d at 266-67 (disavowing jurisdiction even though final judgment recited award of costs); Quave v. Progress Marine, 912 F.2d 798, 801 (5th Cir. 1990). "In this situation, because the intent to appeal is not apparent, prejudice to the adverse party is likely to result if review is granted."

Brunswick, 649 F.2d at 1056.  We are thus without jurisdiction to review the award of attorneys' fees and expenses.

IV

For the foregoing reasons, we AFFIRM in part and DISMISS in part.

AFFIRMED in part and DISMISSED in part.